UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MOREL, an individual on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HNTB CORPORATION, a Delaware corporation, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:  22-cv-00408-AJB-AHG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>**(Doc. No. 53)** |

Presently before the Court is Plaintiff Matthew Morel's ("Plaintiff" or "Class Representative") unopposed[1] motion for preliminary approval of class action and PAGA settlement. (Doc. No. 53.) For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

---

[1]    Defendant HNTB Corporation ("Defendant") failed to file a response to the instant motion. The parties' stipulation that the motion will be unopposed (*see* Doc. No. 53-2 ¶ 79) does not obviate Defendant of its responsibility under the Civil Local Rules to file a response. *See* CivLR 7.1.f.3.a (requiring either an opposition or notice of non-opposition to be filed). Nonetheless, the Court deems the instant motion unopposed. *See* CivLR 7.1.f.3.c.

## I.    BACKGROUND

### A.    Factual Background

This wage and hour putative class action centers around Plaintiff's allegations that Defendant failed to reimburse Plaintiff and the other putative class members for necessary business-related expenses, in violation of California Labor Code §§ 2802(c), California Business & Professional Code §§ 17200 *et seq.*, and the Private Attorney Generals Act of 2004 ("PAGA"). (Doc. Nos. 21 ¶¶ 37–70; 53-1 at 8.) Defendant is an infrastructure engineering and design firm that operates throughout the United States, including eight locations in California. (Doc. Nos. 21 ¶ 2; 53-1 at 7.) Plaintiff worked for Defendant from January 4, 2021, to July 20, 2021, as a Project Controls Manager out of Defendant's Ontario, California location. (Doc. Nos. 21 ¶ 3; 53-1 at 8.)

### B.    Procedural Background

Plaintiff filed the initial complaint on February 23, 2022, in the Superior Court of California, County of San Diego, as Case No. 37-2022-00007029-CU-OE-CTL. (*See* Doc. No. 1-2 at 5–33.) On March 28, 2022, Defendant timely removed the case to this Court. (Doc. No. 1.) On June 9, 2022, Defendant filed a motion to dismiss the complaint for failure to state a claim under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure[2] (Doc. No. 4), which the Court granted on the papers after briefing by both parties (Doc. No. 17).

On December 5, 2022, Plaintiff filed an amended complaint (Doc. No. 21), which Defendant answered on December 19, 2022 (Doc. No. 22).

The parties attended an early neutral evaluation conference with Magistrate Judge Goddard to attempt to reach early resolution of the case on December 21, 2022; however, the parties were unable to reach a settlement at that time. (Doc. No. 29.) The parties then engaged in informal and formal discovery, including exchange of documents related to Defendant's relevant policies and procedures and Plaintiff's personnel file, depositions of

---

[2]    All further references to Rule or Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

Plaintiff and Defendant's 30(b)(6) representative, and extensive meet and confer. (Doc. No. 53-1 at 9.)

In the midst of discovery, the parties attended a private mediation with the Honorable Raul Ramirez (Ret.) on July 20, 2023, but settlement was not reached. (*Id.*) The parties attended an informal discovery conference with Judge Goddard on December 11, 2023, after which Judge Goddard set a Settlement Conference for January 11, 2024. (Doc. Nos. 43; 44.) The parties made significant progress at the Settlement Conference, so Judge Goddard set a follow up Settlement Conference for February 22, 2024. (Doc. Nos. 46; 53-1 at 10.) After attending the second Settlement Conference, the parties accepted the mediator's proposal proffered by Judge Goddard, reaching a settlement in principle. (Doc. Nos. 49; 50; 51; 53-1 at 10.) Over several weeks, the parties extensively negotiated and revised the terms of the settlement. (Doc. No. 53-1 at 10.) On May 23, 2024, the parties executed the settlement agreement. (*Id.*) Finally, on August 1, 2024, Plaintiff timely filed the instant motion. (Doc. No. 53.)

## II.    TERMS OF THE PROPOSED SETTLEMENT

Plaintiff and Defendant have executed a Joint Stipulation of Class Action and PAGA Representative Action Settlement Agreement and Release of Claims ("Settlement Agreement" or "Settlement"). (Doc. No. 53-2.) The primary terms of Settlement are provided below:

### A.    Settlement Amount

Defendant will pay $490,000.00 (the "Gross Settlement Amount"), subject to the Escalator Clause.[3] (Doc. Nos. 53-1 at 10, n.5; 53-2 ¶ 61(b).) The Gross Settlement Amount

---

[3]    The Escalator Clause contemplates that if the number of Work Months during the Class Period is more than ten percent greater than Defendant's original estimate of 34,639 months, then Defendant will increase the Gross Settlement Amount by one percent for every one percent increase in Work Months over the ten percent threshold. (Doc. No. 53-2 ¶ 61(c).) "Work Months" is defined as "the number of months each Class Member worked for Defendant in in California during the Class Period." (*Id.* ¶ 49.) The "Class Period" constitutes "the period of time beginning on March 1, 2020 through May 1, 2024, or the Preliminary Approval Date, whichever occurs first." (*Id.* ¶ 4.)

includes Plaintiff's attorneys' fees (not to exceed 33.33% of the Gross Settlement Amount or $163,317.00) and litigation costs (not to exceed $15,000.00), Plaintiff's Service Payment ($15,000.00), the Settlement Administration Costs (currently estimated to be $12,500.00), the PAGA Settlement and Penalty Payments ($9,800.00), and the Settlement Class Payments to both the Settlement Class Members and the PAGA Employees (currently estimated to be $274,383.00). (Doc. Nos. 53-1 at 10; 53-2 ¶¶ 61(b), (f).)

Each Settlement Class Member will be paid a pro-rata share of the Net Settlement Amount[4] (less the PAGA Settlement Payment) determined as follows:

- For every Work Month during the applicable Class Period that the Settlement Class Member performed work, the Member will receive one share. (Doc. No. 53-2 ¶ 61(g)(i)–(ii).)

- Members of the Work from Home Subclass will be entitled to one additional share for each Work Month during which work was performed in California from March 1, 2020, to February 23, 2024. (*Id.* ¶ 61(g)(ii)(1).)

- Members of the COVID-19 Subclass will be entitled to one additional share for each Work Month during which work was performed in California from March 13, 2020 to June 15, 2020, unless the Class Member already received one additional share for that that particular Work Month as a member of the Work from Home Subclass. (*Id.* ¶ 61(g)(ii)(2).)

- Members of both Subclasses will only be entitled one additional share. (*Id.*)

- The total number of settlement shares for all Class Members will be added together, the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure, and that figure will then be multiplied by each Class Member's *pro rata* portion of the Net Settlement Amount. (*Id.*

---

[4]      The Net Settlement Amount is defined as the Gross Settlement Amount less Plaintiff's attorneys' fees and costs, Plaintiff's Service Payment, the Settlement Administration Costs, and the PAGA Penalty Payment. (Doc. No. 53-2 ¶ 61(f).)

¶ 61(g)(iii).)

- Where a Request for Exclusion is timely, each remaining Settlement Class Member's share will be proportionately increased, so that the amount distributed equals 100% of the Net Settlement Amount. (*Id.* ¶ 61(g)(iv).)

Of the total PAGA Allocation, $7,350.00 (75%) will be paid to the Labor and Workforce Development Agency ("LWDA") as the PAGA Penalty Payment, and $2,450.00 (25%) will be distributed to PAGA Employees as the PAGA Settlement Payment. (*Id.* ¶¶ 25, 28, 31.) Each PAGA Employee will be paid a pro-rata share of the PAGA Settlement Payment portion of the Net Settlement Amount calculated as follows:

- A given PAGA Employee's number of PAGA Pay Periods divided by the sum of all PAGA Pay Periods of all PAGA Employees. (*Id.* ¶ 61(h).)
- The resulting quotient will be multiplied by the PAGA Settlement Payment to determine the individual PAGA Settlement Payment for that PAGA Employee. (*Id.*)

Class and PAGA Settlement Payments will be distributed by the Settlement Administrator by mail to each Settlement Class Member and PAGA Employee. (*Id.* ¶¶ 61(g)(iv), 61(h), 69.) After 180 days, any uncashed, unclaimed, or abandoned Class or PAGA Settlement Payment checks will be transmitted to the California State Controller's Office pursuant to California's Unclaimed Property Law. (*Id.* ¶¶ 61(g)(iv), 61(h), 70.)

### B.    Settlement Notice and Administration

The parties selected Phoenix Settlement Administrators ("PSA") to administer the settlement. (Doc. No. 53-2 ¶ 62.) Defendant will provide the Settlement Administrator a Microsoft Office Excel spreadsheet with the name, last known address, last known telephone number, social security number, respective number of Covered Work Months that each Settlement Class Member worked during the applicable Class Period, and the respective number of Pay Periods that each PAGA Employee worked during the PAGA Period. (Doc. No. 53-2 ¶¶ 7, 68(a).) The Settlement Administrator will mail by first class the proposed Class Notice to Class Members. (Doc. No. 53-2 ¶ 68.) The parties estimate

that the administration costs will be approximately $12,500. (Doc. No. 53-2 ¶ 61(f).)

The proposed Notice contains detailed information about this action, including what the lawsuit is about, why there is a settlement, who is included in the settlement, what the terms of the settlement are, what the impact of the settlement is on a Class Member's rights, how to receive payment, how to object to or be excluded from the settlement, who is representing the class, how to get additional information, and when and where the final approval hearing will be held. (Doc. No. 53-2 at 67–74.) In explaining the terms of settlement, the proposed Notice details how Individual Settlement Payments are calculated for Class Members and for PAGA Employees. (Doc. No. 53-2 at 70–71.) The proposed Notice will be accompanied with the Exclusion Form (Doc. No. 53-2 at 79) and the Work Month or Pay Period Dispute Form (Doc. No. 53-2 at 76–77).

### C.    Objections and Opt-Out Procedure

The Settlement Agreement distinguishes between PAGA Employees and Settlement Class Members with regard to objection and exclusion procedures. PAGA employees are prohibited from objecting or opting out of the Settlement. (Doc. No. 53-2 ¶¶ 61(h), (u), (y), (x).)

Settlement Class Members may object to the Class Claims by (1) appearing in person at the Final Approval Hearing to explain any objection, (2) having an attorney object for the Class Member, or (3) submitting a simple written brief or statement of objection to the Settlement Administrator, postmarked on or before the Response Deadline at the address set forth in the Notice. (*Id.* ¶ 61(x).) To be excluded from the Class Settlement, Class Members must timely submit a completed "Request for Exclusion" to the Settlement Administrator within forty-five days of the initial mailing of the Notice. (*Id.* ¶ 61(w).)

### D.    Attorneys' Fees, Costs, and Class Representative Award

Any attorneys' fees, litigation costs, and Service Payment for Plaintiff that are awarded by the Court are to be paid from the Gross Settlement Amount. (*Id.* ¶¶ 61(m), (n).) Regarding attorneys' fees and costs, the proposed Settlement provides:

In consideration for settlement of the Action and the Release described in

> Paragraph 77 and its subparts herein, Defendant will not oppose Class Counsel's application to the Court for attorney's fees not to exceed 33 1/3% of the Gross Settlement Amount ($163,317.00) and reimbursement of litigation costs and expenses not to exceed $15,000.00.

(*Id.* ¶¶ 61(m), 67.) The Class Notice states that Class Counsel will seek $163,317.00 from the Gross Settlement Amount for attorneys' fees and reimbursement of up to $15,000 for expenses. (Doc. No. 53-2 at 70.)

Regarding Plaintiff's Service Payment, the Class Notice states that Class Counsel will ask the Court to award Plaintiff a Service Payment in the amount of $15,000 "to compensate him for service and extra work provided on behalf of the Class Members and in exchange for a general release of claims." (*Id.* at 70.) The proposed Settlement provides that "in exchange for the general Release described in Paragraph 73 herein, Defendant will not oppose Class Counsel's application to the Court for Service Payment of up to $15,000.00 to Plaintiff for his service as a Class Representative." (Doc. No. 53-2 ¶ 61(n).)

### D.    Releases

In exchange for Defendant's $490,000.00 payment, Class Members who do not opt out of the Class release the following claims against Defendants.

> any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind by each and all of the Settlement Class Members (including participation to any extent in any class or collective action), to obtain a recovery arising out of each and all of the claims, causes of action, demands, damages, penalties, and/or liabilities arising at any time during the Class Period that were pled or which could have been pled based on the factual allegations contained in the Complaint . . . .

(Doc. No. 53-2 ¶ 77.)

In addition to the above release, the Class Representative additionally releases:

> any and all charges, complaints, claims, liabilities, obligations, promises, agreements, contracts, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including for back wages, statutory penalties, civil penalties, liquidated damages, exemplary damages, interest, attorneys' fees, and costs) of any nature whatsoever, from the

> beginning of time through the execution of this Agreement, whether known or unknown, suspected or unsuspected, concealed or hidden, including but not limited to all claims arising out of, based upon, or relating to Class Representative's employment with Defendant or the remuneration for or termination of such employment . . . .

(*Id.* ¶ 73.) The Class Representative's release includes an express waiver of Section 1542 of the California Civil Code. (*Id.* ¶¶ 74–75.) However, the release recognizes that it does not constitute waiver or release of "any claim for workers' compensation benefits or any other claim which cannot be legally waived." (*Id.* ¶ 76.) Moreover, it expressly acknowledges that it does not prohibit the Class Representative "from reporting possible violations of federal or state law or regulation to the government . . . ." (*Id.*)

## III.   LEGAL STANDARD

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)); *see also Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022) (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) ("[W]here the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e).") (internal punctuation omitted).

## IV.   CONDITIONAL CLASS CERTIFICATION[5]

Before granting preliminary approval of settlement agreement in a putative class

---

[5] The following conditional class certification analysis is limited to the Class Action, not the PAGA Representative Action. *See Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 583–84 (9th Cir. 2022) ("PAGA suits exhibit virtually none of the procedural characteristics of class actions, so there is no need for courts to consider adequacy of representation, numerosity, commonality, or typicality, and no need for certification under Rule 23, as the Rule 23 requirements are a logical mismatch for PAGA actions.").

action, the Court must first determine whether the proposed class can be certified. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (citing *Amchem*, 521 U.S. at 613–14). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts "must pay undiluted, even heightened, attention to class certification requirements." *Staton*, 327 F.3d at 952 (quoting *Amchem*, 521 U.S. at 620).

### A.    Proposed Settlement Classes

Plaintiff seeks provisional certification of the putative Class under Federal Rule of Civil Procedure 23(b)(3). The proposed settlement classes are defined as:

- "<u>Class Members</u>": "All individuals who performed work in any capacity for Defendant in California at any time during the Class Period." (Doc. No. 53-2 ¶ 5.)

- "<u>COVID-19 Subclass</u>": "[A]ll Class Members who worked for Defendant at any time in California from March 13, 2020 to June 15, 2020 during the COVID-19 stay at home order." (*Id.* ¶ 13.)

- "<u>Work from Home Subclass</u>": "[A]ll Class Members who were approved to work from home by Defendant at any time during the Class period." (*Id.* ¶ 48.)

"If subclasses are required because of conflicts between the various class members and the inability of either class counsel or class representatives to adequately represent the subclass, 'each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.'" *Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 326 (E.D. Cal. 2018) (quoting *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981)). However, where a subclass is created as a "procedural innovation[] to facilitate management of the class action" pursuant to Rule 23(d), then "it is unnecessary to evaluate it under Rule 23(c)(4) for commonality, numerosity, typicality, and adequacy

of representation." *Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786–87, n.5 (9th Cir. 1982).

Here, the creation of subclasses is not due to conflicts or inadequate representation. Rather, the subclasses appear to be crafted to aid in damage calculations. *See Am. Timber & Trading Co.*, 690 F.2d at 786. As such, the Court views the subclasses as a request for permissive subclassing to facilitate management rather than compulsory to cure conflicts. *See* 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:29 (6th ed. 2024).

### B.  Rule 23(a) Factors

Pursuant to Rule 23(a), a representative party may sue on behalf of all members of a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

#### 1.  Numerosity

First, the numerosity requirement is satisfied where "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). "Although the Supreme Court has held that 'the numerosity requirement imposes no absolute limitations,' courts generally find this requirement satisfied when a class includes at least forty members." *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 213 (E.D. Cal. 2015) (first quoting *Gen. Tel. Co. of Nw. v. E.E.O.C.*, 446 U.S. 318, 330 (1980), then citing

*Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010)) (cleaned up); *see also Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("The Ninth Circuit has not offered a precise numerical standard; other District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25–30 members.").

Here, Plaintiff estimates there are 839 members of the Settlement Class. (Doc. No. 53-1 at 17.) The Court conditionally finds the numerosity requirement has been met.[6]

### 2.    Commonality

Second, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Falcon*, 457 U.S. at 148). "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted) (emphasis in original).

In this action, all claims asserted arise from common facts. Specifically, Plaintiff alleges that Defendant required the putative class to use their personal cell phones for work-related purposes and did not provide portable WiFi devices necessary to provide internet access to the work-provided laptops. (Doc. No. 21 ¶¶ 25–27.) Moreover, Plaintiff alleges that Defendant "did not have a policy to reimburse its employees for their out-of-pocket

---

[6]    In light of the heightened review of pre-certification settlement, the Court notes that both Subclasses meet the numerosity requirement under Rule 23(a)(1) though for different reasons. First, the Court finds the COVID-19 Subclass to be sufficiently numerous with 464 members (*see* Doc. No. 53-1 at 17), as it well exceeds the presumptive minimum threshold. *See Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1032 (S.D. Cal. 2017) ("Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer.") (*quoting Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). Although the Work from Home Subclass is estimated to include on 29 members (*see* Doc. No. 53-1 at 17), the Court finds that joinder by members of that Subclass would be impracticable considering the modest amount each member would be potentially entitled to and the possible geographic diversity as members worked remotely. *See Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319–20 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

cell phone charges and home internet charges." (*Id.* ¶ 20.) Due to these circumstances, Plaintiff further alleges that he and the Class Members suffered the same injury—namely they paid for such charges incurred in discharge of their employment without reimbursement by Defendant, in violation of California Labor Code § 2802. (*Id.* ¶¶ 19–27.)

Under California law, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ." Cal. Lab. Code § 2802(a); *see, e.g.*, *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1078 (9th Cir. 2020) ("[W]hen employees must use their personal cell phones for work related calls, [California] Labor Code section 2802 requires the employer to reimburse them" by "pay[ing] some reasonable percentage of the employee's cell phone bill.").

"District courts throughout this circuit have found that commonality is met when, as here, the proposed class of plaintiffs asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses in violation of Cal. Bus. Code § 2802." *Hopkins v. Stryker Sales Corp.*, No. 5:11-CV-02786-LHK, 2012 WL 1715091, at *5 (N.D. Cal. May 14, 2012) (collecting cases). Questions such as whether Defendant knew of the expenses incurred by the putative class and whether Defendant reimbursed a reasonable percentage of the putative class's expenses are capable of class-wide resolution. *See Santillan v. Verizon Connect, Inc.*, No. 3:21-CV-1257-H-KSC, 2022 WL 4596574, at *3–*6 (S.D. Cal. June 13, 2022). Although each Class Member will likely have incurred differing amounts of cell phone and internet expenses, "the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

Considering the common questions of fact and law at issue here, the Court conditionally finds the commonality requirement is met.

///

///

### 3. Typicality

Third, the claims or defenses of the class representative must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957 (quoting *Hanlon*, 150 F.3d at 1020); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (citation omitted). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Here, Plaintiff's claims are typical of the claims of the absent Class Members because they arose from the same alleged conduct of Defendant, namely the failure to reimburse personal cell phone and internet expenses incurred through discharge of employment duties. Plaintiff and the other Class Members suffered the same type of injury as a result of this alleged conduct, and Plaintiff's claims are reasonably co-extensive with those of absent Class Members. Plaintiff has therefore conditionally satisfied the typicality prong.[7]

///

---

[7]    The Court notes that Plaintiff was employed by Defendant from January 4, 2021, to July 20, 2021. (Doc. No. 21 ¶ 3.) As such, Plaintiff is not a member of the COVID-19 Subclass. Although the Subclasses need not be evaluated under the Rule 23(a) requirements, considering the heightened pre-certification standard, the Court finds the typicality requirement would be met because Plaintiff's injury and the course of conduct that allegedly caused that injury are the same as COVID-19 Subclass Members. *See Hanon*, 976 F.2d at 508. The only difference is the Subclass's narrowed time period. Moreover, this is not an instance where a danger exists that the representative will be preoccupied with defenses unique to his position to the detriment of the absent class members. *Cf. DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) ("A named plaintiff is not typical if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'").

### 4.    Adequate Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process." *In re Volkswagen*, 895 F.3d at 607 (quoting *Hanlon*, 150 F.3d at 1020). "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. "Adequacy of representation also depends on the qualifications of counsel." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Specifically, "[t]he named representative's attorney must be qualified, experienced, and generally capable to conduct the litigation." *Id.* (quoting *Jordan*, 669 F.2d at 1323) (cleaned up).

Plaintiff contends that the adequacy of representation requirement is met here because Plaintiff's "claims are in line with, and are not antagonistic to, those of the Class Members," and he "has prosecuted this action with the interests of the Class Members in mind." (Doc. No. 53-1 at 19.) To that end, Plaintiff avers that he "worked with [his] attorneys to prepare the complaints, provided documents and/or information regarding [his] experience working for Defendant, was deposed, stayed up to date on the case, participated in the mediation process and settlement discussions, and otherwise remained in regular contact with [his] attorneys. (Doc. No. 53-3, Declaration of Matthew Morel, "Morel Decl.", ¶ 12.) Based on these assertions, the Court is preliminarily satisfied that Plaintiff's interests align with those of the proposed class members and that Plaintiff has and will continue to vigorously prosecute the action on behalf of the class.

Additionally, the instant motion asserts adequacy of representation is met by counsel because "Class Counsel have extensive experience in class-action and employment litigation, including wage-and-hour class actions, and do not have any conflict with the Class." (Doc. No. 53-1 at 19.) In support of the adequacy of Schneider Wallace Cottrell

14

Konecky LLP ("SWCK"), Attorney Carolyn H. Cottrell submitted a declaration detailing both her experience and that of the firm as a whole. (Doc. No. 53-2, Declaration of Carolyn H. Cottrell, "Cottrell Decl.") For example, Cottrell attests, *inter alia*, that "SWCK is regarded as one of the leading private plaintiffs' firms in wage and hour class actions and employment class actions." (*Id.* ¶ 5.) Cottrell herself is a partner of SWCK, has litigated hundreds of actions, and has devoted "[n]early [her] entire legal career . . . to advocating for the rights of individuals who have been subjected to illegal pay policies, discrimination, harassment and retaliation and representing employees in wage and hour and discrimination class actions." (*Id.* ¶¶ 3, 7.) In support of the adequacy of W Employment Law, APC, Attorney Jacob N. Whitehead submitted a similar declaration, averring that he and his firm have "extensive experience in litigating class-action and PAGA representative actions in state and federal court." (Doc. No. 55, Declaration of Jacob N. Whitehead, "Whitehead Decl.") Specifically, Whitehead, who is the founding shareholder and senior managing partner at the firm, has "dedicated [his] entire career and practice to litigating and successfully resolving unlawful practices of employers" and has represented "thousands of plaintiffs and putative class members in hundreds of cases." (*Id.* ¶¶ 1, 20.) Based on these assertions, the Court is preliminarily satisfied that Class Counsel has no conflict of interest, is experienced, and will continue to vigorously prosecute the action on behalf of the Class.

Based on the assertions of Plaintiff and Class Counsel, and on record currently before the Court, the adequacy of representation requirement is conditionally satisfied.

Accordingly, the Court finds Plaintiff has met his burden of demonstrating each of the four Rule 23(a) prerequisites at this stage.

### C. Rule 23(b) Factors

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. Relevant here, pursuant to Rule 23(b)(3), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law

or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc.*, 577 U.S. at 453 (citation omitted).

Plaintiff argues that "the resolution of the class claims would be achieved through the use of common forms of proof, such as Defendant's uniform policies, and would not require inquiries specific to individual Class Members." (Doc. No. 53-1 at 20.) However, later in support of the adequacy of the Settlement, Plaintiff states that "Defendant argued that individualized issues would predominate Plaintiff's core expense claims because the court will have to determine whether the claimed expenses were necessary and whether they were incurred in direct consequence of the discharge of the Class member's duties." (*Id.* at 23.)

As discussed *supra*, the many issues are common to all putative Class Members. Specifically, Plaintiff alleges all Class Members were subjected to Defendant's lack of a policy to reimburse expenses. As such, whether Defendant reimbursed a reasonable percentage of the Class Members' expenses are capable of class-wide resolution. *See, e.g.*, *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 609 (N.D. Cal. 2014) ("Plaintiffs' claim for reimbursement of expenses under Cal. Labor Code § 2802 . . . lends itself to class treatment to the extent that [the defendant] has a uniform policy as what is reimbursed and

what is not."); *Hopkins*, 2012 WL 1715091, at \*9–\*10 ("Based on the record before the Court, common questions predominate in the inquiry as to whether [the defendant's] business expense reimbursement policy violated Cal. Lab. Code § 2802.") (collecting cases). Moreover, considering the circumstances of the time period, namely the COVID-19 pandemic and the corresponding state-wide stay-at-home order, the Court finds upon the current record that the necessity of personal cell phone and internet expenses may be determined on a class-wide basis using common proof. As noted by Plaintiffs, the individualized issues of damage calculations, such as the number of Work Months a given Class Member incurred work-related cell phone and internet expenses and the cost of those services for a given Class Member, do not predominate over the common issues. *See Vaquero*, 824 F.3d at 1155.

Considering both the individual and common questions of fact and law at issue here, the Court finds the predominance requirement is met.

### 2.    Superiority

In determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," courts consider (1) the interest of class members individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in this particular forum; and (4) the manageability of the action as a class. Fed. R. Civ. P. 23(b)(3); *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *as amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

Plaintiff argues that proceeding as a class action is superior because the case "involves hundreds of workers with what Plaintiff contends are very similar, but relatively small, claims for monetary injury[,]" requiring duplicative discovery, duplicative litigation, and personal participation by each putative Class Member if brought individually. (Doc. No. 53-1 at 20.) Moreover, Plaintiff argues that "Settlement provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal

system with numerous cases." (*Id.* at 21.)

First, considering the 839 putative Class Members with claims that, based on the record before the Court, whose relatively modest damages would make pursuing the claim individually economically infeasible. *See Zinser*, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, this [first] factor weighs in favor of certifying a class action."). Second, neither party identifies nor is the Court independently aware of any other pending litigation regarding the same controversy. Third, Plaintiff's claims arise from employment in California, Plaintiff resides in San Diego County, and Defendant has an office in San Diego; however, Defendant also has offices in Ontario, Los Angeles, Los Angeles Airport, Oakland, San Francisco, San Jose, and Santa Ana. (Doc. Nos. 1-2 at 7; 21 ¶¶ 6, 13, 17.) As such, this factor is weighs neither in favor nor against certification. Finally, manageability need not be considered when considering certification in context of settlement. *See Amchem*, 521 U.S. at 620. Balancing the factors set forth in Rule 23(b)(3), the Court finds the superiority requirement is met.

## D. Conclusion

Because Plaintiff has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b), the Court certifies the Class for settlement purposes. The Court appoints Plaintiff Matthew Morel as Class Representative and Schneider Wallace Cottrell Konecky LLP and W Employment Law Group, APC as Class Counsel.

## V. PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

Next, the Court must make a preliminary determination regarding whether the proposed settlement and notice are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1), (2). Traditionally, courts in this Circuit assess the fairness, reasonableness, and adequacy of a proposed Rule 23 class settlement by balancing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.* ("*In re Mego*"), 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## A.    Rule 23(e)(2) Factors

The Court turns first to the Rule 23(e)(2) factors.

### 1.    Adequacy of Relief

To determine the adequacy of the relief this Settlement provides Class Members, the Court will consider the amount of recovery in relation to the strength of Plaintiff's case, the risks and expenses likely engendered by continued litigation, the requested attorney's fees, and the effectiveness of the proposed distribution method. *See* Fed. R. Civ. P. 23(e)(2)(C).

///

### i.    Amount of Recovery

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKx), 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23, 2024). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d at 459 (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)).

Here, the average gross recovery per Class Members is estimated to be $327.04. (Doc. No. 53-1 at 24.) Plaintiff estimates the range of exposure to be from $1.36 million to $3.27 million. (*Id.* at 23.) The negotiated Gross Settlement Amount of $490,000, therefore, represents between 15% and 36% of the estimated exposure. (*Id.*) Plaintiff asserts that this recovery is "excellent" and "significant compensation" considering the possibility of "expanding and uncertain litigation." (*Id.* at 24.)

Although "excellent" seems an overstatement, this estimated percent recovery is within the range found reasonable by courts in this Circuit for similar cases. *See, e.g.*, *Castro v. Paragon Indus., Inc.*, No. 119CV00755DADSKO, 2020 WL 1984240, at *14 (E.D. Cal. Apr. 27, 2020) (collecting cases approving settlements reflecting 12% to 35% of the estimated maximum recovery). As such, the amount of recovery weighs in favor of a preliminary finding of adequacy.

### ii.    Strength of Plaintiff's Case; Risk, Expense, Complexity, and Likely Duration; and Risk of Maintaining Class Action Status

When assessing "the costs, risks, and delay of trial and appeal[,]" Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial[.]" *Hanlon*, 150 F.3d at 1026. However, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the

merits . . . for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Just.*, 688 F.2d at 628. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citation omitted).

Here, the Settlement Agreement reaffirms that "Defendant denies any liability or wrongdoing of any kind whatsoever," that "Plaintiff and the Class Members have been properly reimbursed business expenses." (Doc. No. 53-2 ¶ 54; *see also id.* ¶ 94 ("Nothing contained herein, nor the consummation of this Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant. Defendant denies each and all of the claims and contentions alleged by the Plaintiff in the Action.").) Rather, Defendant contends that "it has complied at all times with the California Labor Code[,] applicable Wage Orders of the Industrial Welfare Commission[,]" and "the California Business and Professions Code." (*Id.* ¶ 54.)

In the instant motion, Plaintiff points out the Class faces hurdles proving the claimed expenses were necessary, whether they were incurred in direct consequent of the discharge of the Class member's duties, and, thus, whether class certification is appropriate. (Doc. No. 53-1 at 23.) Defendant additionally asserts that "it provided cellular devices and hotspots to some Class members and that damages may be reduced because work-related calls can and were done through Class Member's work computers through communication platforms such as Teams and Webex." (Doc. No. 53-2 ¶ 38.) If litigation were to continue, the parties would continue with discovery, including significant expert discovery, certification and summary judgment motion practice, trial preparation, and trial. (*Id.* at 25.) Moreover, Plaintiff argues that a trial on the merits would carry a significant degree of risk and expense. (*Id.*; *see also* Doc. No. 53-2 ¶ 55 (noting the "the risk of significant delay, the risk the Class will not be certified by the Court, defenses asserted by Defendant, and numerous potential appellate issues").)

22-cv-00408-AJB-AHG

Balancing the uncertainty and delay of continued litigation against the immediacy and certainty of settlement, these factors weigh in favor of a preliminary finding of adequacy. *See, e.g.*, *Heid v. CyraCom Int'l, Inc.*, No. 22-CV-1445-MMA-KSC, 2024 WL 4008650, at *6 (S.D. Cal. Aug. 30, 2024), *Thompson v. Costco Wholesale Corp.*, No. 14-CV-02778-CAB-WVG, 2017 WL 3840342, at *6 (S.D. Cal. Sept. 1, 2017).

### iii.  Proposed Award of Attorneys' Fees and Litigation Costs

The Settlement Agreement provides that Class Counsel will request attorneys' fees in the amount of 33.33% of the Gross Settlement Amount, which is $163,317.00 and no more than $15,000 to reimburse reasonable litigation costs. (Doc. Nos. 53-1 at 27; 53-2 ¶ 67.)

As part of evaluating the settlement terms, the court must also consider "the terms of any proposed award of attorney's fees" to determine "whether the attorneys' fees arrangement shortchanges the class." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting in part Fed. R. Civ. Pro. 23(e)(2)(C)(iii)). Courts "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Id.* (internal quotation marks omitted).

"In a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). "Under the percentage-of-fund method, the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee." *Id.* (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "The benchmark percentage is 25%, but, similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.* ("*In re Apple*"), 50 F.4th 769, 784 (9th Cir. 2022) (quoting *Kim*, 8 F.4th at 1181); *cf. Stanger*, 812 F.3d at 738 ("Because there is a strong presumption that the lodestar amount

represents a reasonable fee, adjustments to the lodestar "are the exception rather than the rule.").

"[I]n assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method," courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD-Rental*"), 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

"Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple*, 50 F.4th at 784. "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Stanger*, 812 F.3d at 739 (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002)).

Given the very limited motion practice in this case, the early resolution, and the results achieved, the Court questions whether such an award is warranted. Moreover, based on these circumstances, the requested fee raised the specter that Class Counsel "tacitly reduc[ed] the overall settlement in return for a higher attorney's fee." *In re Bluetooth*, 654 F.3d at 946 (quoting *Hanlon*, 150 F.3d at 1026). However, the Settlement is not contingent upon the Court awarding Class Counsel 33.33% of the Gross Settlement Amount or Plaintiff receiving an incentive award. (*See* Doc. No. 53-2 ¶ 67)(a)–(b).)

Considering the assertions of Class Counsel and the case law Plaintiff asserts is analogous to the instant case, the Court is preliminarily satisfied that this factor should not prevent approval at this stage. However, Class Counsel's requested fees will be closely scrutinized as part of any future Rule 23(h) motion. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[T]he district court has a duty to scrutinize the

agreement for signs that the fees requested by counsel are unreasonably high.”). To that end, Class Counsel is warned that cursory recitations of the “exceptional results” or “serious risk of continued litigation,” as provided here, are insufficient to justify an upward deviation from the Ninth Circuit’s 25% benchmark. Rather, Class Counsel will be expected to provide:

(1)     detailed explanation for the requested attorney fees addressing all the Ninth Circuit’s applicable factors;

(2)     documentation, such as billing records for all attorneys on the matter, to justify the requested attorney’s fees;

(3)     declarations addressing reasonableness of each attorney’s hourly rate considering prevailing rates for counsel of comparable experience, skill, and reputation in the Southern District of California; and

(4)     itemized records reflecting the requested litigation costs.[8]

Due to the Court’s concerns and considering that Plaintiff and Class Counsel are to address these concerns at the final approval stage, this factor weighs neither in favor nor against a finding of adequacy.

### iv.    Effectiveness of the Proposed Distribution Method

“[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible.” 4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed. 2024).

Here, the claims process is straightforward as every Class Member will automatically be included in the Settlement and receive a Settlement Payment without the need for taking any action. Each Notice will be individualized and pre-printed with that specific Class Member’s Covered Work Months. (Doc. No. 53-2 ¶ 61(s).) Class Members

---

[8]     The Court acknowledges that Class Counsel expressed the intention of providing fully itemized and detailed billing and cost information at the time of the Final Approval *hearing*. (Whitehead Decl. ¶¶ 22–23.) However, the Court expects such documentation to be filed as exhibits to any motion for attorney’s fees.

only need to take action if they seek to be excluded from the Class Settlement, to contest their Covered Work Months, or to object to the Settlement. (*Id.* ¶¶ 61(s), (w).)

Moreover, within fifteen business days of the effective date[9] of the Settlement, Defendant is to transfer the Gross Settlement Amount to the Qualified Settlement Fund created by the Settlement Administrator. (Doc. No. 53-2 ¶¶ 35, 61(q).) No later than seven business days after the transfer, the Settlement Administrator will mail the Settlement Payments to each Class and PAGA Member. (*Id.* ¶ 61(r).) Essentially, Class Members would likely receive their Settlement Payments within two months of the Settlement becoming effective.

Distribution, both in method and timeline, is reasonable and efficient. Thus, this factor weighs in favor of a preliminary finding of adequacy.

### v.    Conclusion

Considering the amount of recovery, the certainty that settlement brings, and the efficiency of the distribution method, the Court finds that the relief to be adequate, despite concerns regarding the requested attorney's fees and incentive award. As such, the Rule 23(e)(2)(C) factor preliminarily weighs in favor of approval.

### 2.    Adequate Representation

Second, the court considers whether "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). When analyzing the adequacy of the representation, the court must address two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). "As to the latter question, the relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous

---

[9]    The Settlement is to be "effective" after the time to appeal the Final Approval Order has expired or after any appeal is finally resolved. (Doc. No. 53-2 ¶ 16.)

representation." *In re Online DVD-Rental*, 779 F.3d at 943 (citation and internal punctation omitted).

Regarding the second question, as discussed *supra*, Class Counsel have extensive experience in class-action and employment litigation, including wage-and-hour class actions. *See supra* § IV.B.4. Additionally, there are no differences between Plaintiff's claims and that of the class and, although Plaintiff seeks a service award, the Settlement is not *conditioned* on the award and the Court is not aware of an ex-ante agreement between Plaintiff and Class Counsel regarding such award. *See In re Online DVD-Rental*, 779 F.3d at 943. Accordingly, the Court is preliminarily satisfied that Plaintiff and Class Counsel will prosecute the case vigorously on behalf of the class.

As to the first question, based on the instant motion and declarations of Plaintiff and Class Counsel attached thereto, it does not appear that either Plaintiff or Class Counsel have any interests that conflict with the Class, beyond Plaintiff's receipt of the proposed incentive award. (Doc. No. 53-1 at 19.)

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *but see Staton*, 327 F.3d at 975–78 (discussing conflicting interests for named plaintiff receiving incentive award). Although "[i]ncentive awards are fairly typical in class action cases," they are discretionary, *id.* at 958, and "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives," *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). "[E]xcess incentive awards may put the class representative in a conflict with the class and present a 'considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations.'" *Rodriguez*, 563 F.3d at 960 (quoting *Staton*, 327 F.3d at 977–78).

In deciding whether to approve an incentive award, courts consider factors including "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d at 947 (quoting *Staton*, 327 F.3d at 977); *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1002 (N.D. Cal. 2017) (listing factors including risk to the representative, notoriety and personal difficulties encountered, amount of time and effort spent, duration of litigation, and personal benefit).

Here, the Settlement Agreement proposes a $15,000 incentive award for the named plaintiff in this action, Matthew Morel. (Doc. No. 53-1 at 29; 53-2 ¶¶ 8, 61(f), 61(n).) Plaintiff, who initially filed this action in state court in February of 2022 (*see* Doc. No. 1-2 at 5), has been in regular communication with counsel, provided factual background for the complaint, participated in multiple interviews, sat for deposition, produced documents, participated in the mediation process and settlement negotiations, and carefully reviewed documents, including the instant Settlement. (Morel Decl. ¶¶ 8–12.) Plaintiff states he has "contributed numerous hours" to litigating these claims. (*Id.* ¶ 12.)

Considering class actions based on violations of the California Labor Code, Plaintiff's request for a $15,000 service award appears potentially excessive for this district under the circumstances. *See, e.g.*, *Thompson*, 2017 WL 3840342, at *2–*3, *10 (finding $5,000 service award "excessive" an awarding $2,000 instead where the gross settlement fund was $2,000,000 to be disbursed among 925 potential class members); *Smith v. Kaiser Found. Hosps.*, No. 18CV780-KSC, 2020 WL 5064282, at *4, *6, *20 (S.D. Cal. Aug. 26, 2020) (finding reasonable awards totaling $7,500 for two class representatives where the gross settlement fund was $1,475,000, in addition to any employer payroll taxes, to be divided amongst approximately 437 class members); *Heid*, 2024 WL 4008650, at *2, *13–*14 (approving $7,500.00 per named plaintiff, for a total of $22,500, because it made up 0.83% of the gross settlement amount of $2,700,000); *Pipich v. O'Reilly Auto Enters., LLC, et al.*, No. 3:21-CV-01120-AHG, 2025 WL 42505, at *2, *8 (S.D. Cal. Jan. 7, 2025)

(approving incentive awards for five class representatives totaling $55,000 because it represented only 1.34% of the gross settlement amount of $4,100,000).

Moreover, none of the cases cited by Plaintiff in support of his request are analogous because all involve settlements over $5 million. *See, e.g.*, *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-CV-411-WQH-AHG, 2021 WL 3419232, at *2, *7–*8 (S.D. Cal. Aug. 5, 2021) (approving a $15,000 award because it constituted approximately 0.2% of the $7.6 million gross settlement fund, and the total awards for all six representatives constituted approximately 0.86%); *Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7785852, at *1–*2 (N.D. Cal. Dec. 9, 2016) (awarding $15,000 each to three class representatives where the gross settlement fund was $13.5 million); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 296, 299–300 (N.D. Cal. 1995) (finding a $100,000 request excessive and reducing it to $50,000 where the gross settlement fund was $76,723,213.26); *Hose v. Wash. Inventory Serv., Inc.*, No. 14-CV-2869-WQH-AGS, 2020 WL 3606404, at *3 (S.D. Cal. July 2, 2020) (awarding $25,000 across two representatives where the gross settlement fund was $6,165,500). The instant settlement of $490,000 is in no way comparable to the cited cases. Here, the award of $15,000 would constitute 3% of the gross settlement, far greater than the fractional percents of Plaintiff's case law. *See Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1079 (C.D. Cal. 2023) ("Service awards of $15,000 are certainly not common in wage-and-hour class actions, especially those that settle at an early stage of the litigation.").

Accordingly, the Court questions whether a $15,000 service award is warranted; however, as the Settlement Agreement leaves the exact amount to the Court's discretion (*see* Doc. No. 53-2 ¶ 61(n)), the Court does not find this a reason to deny preliminary approval. *See, e.g.*, *Taylor v. Populus Grp., LLC*, No. 20-CV-0473-BAS-DEB, 2022 WL 3045366, at *9 (S.D. Cal. Aug. 2, 2022) (preliminarily approving a $5,000 service payment in a California labor class action and ordering the class representative to address why he is entitled to a "service payment that may be excessive in relation to similar cases and the expected recovery for other Class Members here"). In the parties' future motion for final

approval and any corresponding motion for award of fees that includes the service award, the parties must:

(1) address the legal and factual basis supporting the specific amount requested in the service award; and

(2) provide a declaration from Matthew Morel that, *inter alia*, estimates the hours expended on tasks completed in furtherance of this litigation and detail any specific risk he faced by prosecuting this action.

Subject to the Court's foregoing concerns regarding Plaintiff's requested service award, the Court finds that Plaintiff and Class Counsel have preliminarily satisfied the adequacy requirement of Rule 23(e)(2)(A).

### 3.    Signs of Collusion

In reviewing the next Rule 23(e) factor, the Court must examine the Settlement for indicia of collusion that would undermine a prima facie arm's length negotiation. Signs of collusion may include (a) disproportionate distributions of settlement funds to counsel; (b) negotiation of attorney's fees separate from the class fund (a "clear sailing" provision); or (c) an arrangement for funds not awarded to revert to the defendants. *See Staton*, 327 F.3d at 965. If multiple indicia of implicit collusion are present, the district court has a heightened obligation to assure that fees are not unreasonably high. *Id.*

Here, the parties participated in private mediation, an Early Neutral Evaluation, and two additional settlement conferences before both sides accepted Judge Goddard's mediator's proposal. (Doc. No. 53-1 at 26. *See also* Doc. Nos. 29; 45; 49.) The fact that the settlement was reached with the assistance of experienced mediators suggests that the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL, 2024 WL 4994339, at *12 (S.D. Cal. Dec. 5, 2024) ("The use of a mediator on two separate occasions to negotiate settlement and the exchange of discovery beforehand both support a

conclusion that Plaintiffs were appropriately informed in negotiating a settlement, and that the settlement was not the result of collusion or bad faith by the parties or counsel."); *Lopez v. Velocity Transp. LLC*, No. 22-CV-1414-RSH-KSC, 2024 WL 4957565, at *6 (S.D. Cal. Dec. 3, 2024) (finding a settlement to be the product of "serious, informed, non-collusive negotiations" where it was reached through acceptance of a mediator's proposal after full-day negotiations and extensive discovery); *Lusk v. Five Guys Enters. LLC*, No. 117CV00762AWIEPG, 2022 WL 4791923, at *8 (E.D. Cal. Sept. 30, 2022) ("The Parties did not reach an agreement directly at the conclusion of mediation, but they eventually reached a settlement after informed, arm's-length negotiations and with the help of the mediator's proposal to resolve the matter. In light of the above, the Court finds that this factor weighs in favor of preliminary approval."). However, the Court notes that, after both parties accepted the mediator's proposal, the exact terms of the Settlement Agreement were "extensively negotiated and revised over several weeks" by the parties. (Doc. No. 53-1 at 26; Cottrell Decl. ¶ 21; *but see* Whitehead Decl. ¶ 15 ("Although professional, at all times, the Parties' negotiations were adversarial, certainly robust, and non-collusive.").) Also, the parties did not identify any side agreements made in connection with the settlement. *See* Fed. R. Civ. P. 23(e)(3).

The Court notes with concern that there is a clear sailing provision providing that Defendant will not object to Class Counsel's request for attorney's fees up to 33.33% of the Gross Settlement Amount, for litigation expenses up to $15,000, or for Plaintiff's service award up to $15,000. (*See* Doc. No. 53-2 ¶ 67.) However, "[n]o portion of the Gross Settlement Amount will revert to Defendant." (Doc. No. 53-2 ¶ 61(d); *see also id.* ¶ 67(e) ("[A]dditional amounts not awarded to as attorneys' fees and litigation costs and expenses shall be added to the Net Settlement Amount to be distributed to Settlement Class Members.".)

Finally, considering the existence of a clear sailing provision, the Court's concern that Class Counsel's requested $163,317.00 (33.33%) plus up to $15,000 in litigation expenses possibly represents a disproportionate distribution of settlement funds to counsel

is heightened. *See supra* § V.A.1.iii. However, as any unawarded fees flow back into the Net Settlement Fund and as the Court has laid out the concerns Class Counsel must address in their fees motion, the existence of a clear sailing provision is not such an indication of collusion that it outweighs the mediator-facilitated, hard-fought Settlement. The Court preliminarily finds this factor weighs in favor of approval, subject to further scrutiny of additional explanation and evidence in support of the attorney's fees and incentive award requests.

### 4. Equitable Treatment of Class Members

As to the fourth and final Rule 23(e)(2) factor, the Court examines whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This inquiry considers both (i) equity across sub-categories, or segments, of the class, and (ii) equity between class representatives and unnamed class members.

As discussed *supra*, the Settlement Agreement treats the named Plaintiff differently from other Class Members by providing him an incentive award in addition to his *pro rata* share. *See supra* § V.A.2.

Additionally, although relief is distributed to all class members on a *pro rata* basis accounting for the number of Work Months each Class Member worked for Defendant during the Class Period, members of the Subclasses receive an additional share "to reflect the varying value of the Subclass claims." (Doc. No. 53-2 ¶ 61(g).) However, if a Class Member is a member of both Subclasses, that Class Member will be entitled to only one additional share for Work Month qualifying under both Subclasses. (*Id.* ¶ 61(g)(ii)(2).) Plaintiff fails to explicitly explain how the claims of the Subclasses vary from that of the rest of the Class and why this calculation of additional shares is an equitable representation of those differences. However, in discussing estimated exposure, Plaintiff addresses that the claims were stronger in relation to Defendant's applicable defenses with regard to the Subclasses. (*See* Doc. No. 53-1 at 23.) Accordingly, the Court is preliminarily satisfied that the apportionment takes appropriate account of the differences between Class Members considering the duration of their employment during the applicable time period and the

potential variation in strength of their claims. In the motion for final approval, the parties must *explicitly* address and justify the equity of the additional shares for Members of the Subclasses.

## B.    Additional Ninth Circuit Factors

As the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the remaining factors traditionally considered by this Circuit.[10] *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

### 1.    Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As such, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 (citation and internal quotation marks omitted).

Here, "[b]oth Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). In addition to being familiar with the present dispute, Class Counsel has significant expertise in employment litigation. (*See* Cottrell Decl. ¶¶ 3, 6–7; Whitehead Decl. ¶¶ 20–21.) This factor weighs in favor of approval.

### 2.    Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement

---

[10]    There is no government actor present in the instant action. Thus, the Court finds that factor neutral and foregoes further analysis. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 n.7 (9th Cir. 2004) ("Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case has been omitted).

action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529).

At this preliminary approval stage, Class Members have yet to receive notice of settlement. Accordingly, the Court will revisit this factor with the subsequent motion for final approval of settlement.

### C.     Settlement of PAGA Penalties Claim

As the Settlement resolves Plaintiff's PAGA claims, the Court must analyze whether the Settlement fulfils the statutory requirements of PAGA and is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *See* Cal. Lab. Code § 2699(s)(2) ("The superior court shall review and approve any settlement of any civil action filed pursuant to this part."); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (identifying that district courts apply a "Rule 23-like standard" due to the absence of authority governing the standard for review and approval of PAGA settlements).

### 1.     PAGA Statutory Requirements

Under PAGA's remedial scheme, civil penalties are distributed between "the aggrieved employees" (25%) and the LWDA (75%). *See* Cal. Lab. Code § 2699(i) (2022) (amended July 1, 2024).[11] The proposed settlement must be sent to the LWDA at the same time it is submitted to the court. Cal. Lab. Code § 2699(s)(2). Finally, aggrieved employees are prohibited from opting out of any settlement. *See Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009) ("Because an aggrieved employee's action under the Labor Code Private Attorneys General Act of 2004 functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government.");

---

[11]     Effective July 1, 2024, civil penalties recovered by aggrieved employees are now allocated with 65% distributed to the LWDA and 35% to the aggrieved employees. Cal. Lab. Code § 2699(i) (2024). However, the amendment does not apply to the instant action as the complaint was filed prior to June 19, 2024. *See* Cal. Lab. Code § 2699(v)(1).

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) ("Thus, in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement.").

First, the Settlement distributes the PAGA Allocation appropriately with $7,350.00 or 75% to be paid to the LWDA and $2,450.00 or 25% to be distributed to PAGA Employees. (Doc. No. 53-2 ¶¶ 25, 28, 31.)

Second, in accordance with the statutory requirements, the Settlement mandates Plaintiff provide the Settlement Agreement to the LWDA. (Doc. No. 53-2 ¶¶ 61(u) ("Plaintiff shall serve a notice of settlement on the LWDA at or before the time Plaintiff files the motion for preliminary approval."), 81 (In accordance with section 2699(l)(2) of the California Labor Code, Plaintiff shall provide a copy of this Settlement Agreement to the LWDA on or before the date Plaintiff files his motion for preliminary approval of this Settlement with the Court.").) Upon motion for final approval, Class Counsel must confirm by declaration that provisions 61(u), 81, and 84 of the Settlement Agreement were fulfilled and provide the specific dates such action was taken.

Third, the Settlement Agreement and Notice both clearly state that PAGA Employees cannot opt out from settlement of the PAGA Claims. (Doc. No. 53-2 ¶¶ 61(h), (u), (y), (x).)

Accordingly, the Court is preliminarily satisfied that the PAGA statutory requirements are met by the instant Settlement Agreement.

### 2.    Fairness, Adequacy, and Reasonableness of PAGA Allocation

"[W]hen a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *Haralson*, 383 F. Supp. 3d at 971 (quoting *O'Connor*, 201 F. Supp. 3d at 1133).

Considering that the estimated Class includes 839 individuals, the average payment to PAGA Employees would be estimated at $2.92. Though quite low, other courts have approved similar recovery amounts. *See, e.g.*, *Granados v. Hyatt Corp.*, No.: 23-cv-01001-H-VET, 2024 WL 3941828, at *2 (S.D. Cal. Aug. 26, 2024) (granting preliminary approval of class action settlement which included terms that "the estimated average PAGA payment to aggrieved employees is $5.17"); *see also Wells v. DCI Donor Servs., Inc.*, No. 2:21-CV-00994-CKD, 2024 WL 4436905, at *11 (E.D. Cal. Oct. 7, 2024) ("Though the PAGA payment will be much lower than the Rule 23 payments, this will ultimately benefit the class members, as PAGA's 75%/25% allocation would only shift funds away from the class members—who appear to be the same set of individuals as the PAGA members.").

Additionally, as Plaintiff argues (Doc. No. 53-1 at 26–27), the PAGA Allocation represents 2% of the Gross Settlement Amount, which is within the range of PAGA settlements approved by this Court and other district courts in California. *See e.g.*, *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving a PAGA apportionment of 0.67% of the gross settlement fund because the LWDA did not object); *Cabrales*, 2024 WL 4994339, at *17 (approving a PAGA allocation constituting approximately 1% of the maximum settlement fund); *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *2 (N.D. Cal. Aug. 25, 2017) (approving allocation of $5,000, or approximately 1%, for PAGA claims out of the $370,000 total settlement fund); *Alcala v. Meyer Logistics, Inc.*, No. CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA allocations between 0% and 2% of the gross settlement amount).

While the Court would not describe the potential individual payments to class members as "robust," the Court is preliminarily persuaded that PAGA's interests are satisfied given the difficulties Plaintiff would have in litigating this case through trial and given the parties' negotiation efforts. *Cf. Haralson*, 383 F. Supp. 3d at 972 ("[W]here the settlement of Labor Code claims under Rule 23 provides 'robust' relief to the class, it

supports a greater reduction in PAGA penalties."). Accordingly, the Court preliminarily finds the PAGA Allocation to be fair, adequate, and reasonable considering it in relation to the Class recovery and to other approved PAGA Settlements.

### 3. Conclusion

Based on the foregoing, the Court is preliminarily satisfied that the Settlement meets PAGA's statutory requirements and is fair, adequate and reasonable.

### D. Settlement Administration

To ultimately approve a class action settlement, a district court must ensure class members were notified of the proceedings, had the opportunity to opt out or, for those who remain in the settlement, object to any of the settlement's terms, and were provided the chance to appear at fairness hearing. Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5).

To effectuate these procedures, the parties have agreed to retain PSA. (Doc. No. 53-2 ¶ 62.) The Court approves and appoints PSA to administer notice and the Settlement.

Additionally, the Settlement Agreement states the Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and distribution of payments from the Gross Settlement Amount, not to exceed Settlement Administration costs not to exceed $12,500. (*Id.* ¶ 61(p).) The Court finds the estimated $12,500.00 Settlement Administrator costs reasonable.

### E. Form and Method of Proposed Notice

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem*, 521 U.S. at 617. Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Additionally,

as settlement was reached pre-certification, the notice must also comply with Rule 23(c)(2). *See* Fed. R. Civ. P. 23(c)(B) (setting forth seven requirements for notice of a class certified pursuant to Rule 23(b)(3)).

Here, Plaintiff propose that notice to the Class be sent by first class mail to the last known and updated addresses of all Class Members based on Defendant's Class List and diligent administrative efforts. (Doc. No. 53-2 ¶ 68.) To implement this notice procedure, Defendant will provide the Settlement Administrator with a Class List and Data for each Class Member. (*Id.* ¶ 68(a).) The Settlement Administrator will thereafter conduct a national change of address search of all Class Members and will update such addresses as necessary, finalize the Class Notice Packet, and mail the Class Notice Packet to the Class Members. (*Id.*) In the event the Settlement Administrator receives a Notice Packet returned as undeliverable, the Settlement Administrator will remail the Notice Packet to the forwarding address. (*Id.* ¶ 68(d).) If a Settlement Class Member's Notice Packet is returned after mailing without a forwarding address, the Settlement Administrator will conduct a computer search for a new address using the Class Member's social security number or other information. (*Id.*)

Having reviewed the proposed Class Notice Packet, the Court concludes the Notice complies with Federal Rule of Civil Procedure 23. However, the Court identifies that the following changes are to be made to the proposed Notice for clarity and accuracy:[12]

(1)    "If you disagree with this number, you may submit **the "Work Month or Pay Period Dispute Form" (enclosed herein) and** evidence to the Settlement Administrator on or before _____, 2024, with documentation to establish the number of months you claim to have actually worked for HNTB in California between March 1, 2020 and May 1, 2024 (excluding any leaves of absence)." (Doc. No. 53-2 at 71.)[13]

---

[12]    The parties are to remove stricken text and add text in red.
[13]    The "Work Month or Pay Period Dispute Form" form is included in the proposed Notice Packet; however, the instructions for disputing the pre-printed information do not currently reference the form.

(2)    "~~Department~~ Courtroom 4A of the United States District Court, Southern District **of California**, located at ~~333~~ 221 West Broadway, San Diego, CA 92101." (*Id.* at 73.)

(3)    "Information about this case is also available online by inputting the case number at the Court's website _____ under the "~~Civil Case and Document Access~~ **PACER Service Center**" link." (*Id.* at 74.)

(4)    "I [insert your name] _____ wish to ~~be~~ dispute the number of Work Months calculated for me as part of the settlement in the case of *Morel v. HNTB, United States District Court, Southern District of California, Case No. 3:22-cv-00408-AJB-AHG*." (*Id.* at 76.)

(5)    "I [insert your name] _____ wish to ~~be~~ dispute the number of Pay Periods calculated for me as part of the settlement in the case of *Morel v. HNTB, United States District Court, Southern District of California, Case No. 3:22-cv-00408-AJB-AHG*." (*Id.*)

## VI.    CONCLUSION

For the reasons stated above, the Court enters the following orders:

1.    **Conditional Class Certification**: The Court **GRANTS** Plaintiff's request for conditional certification of the Settlement Classes and **DEFINES** the Settlement Classes as set forth *supra* § IV.A. The Court **APPOINTS** Plaintiff Matthew Morel as Class Representative and **APPOINTS** Schneider Wallace Cottrell Konecky LLP and W Employment Law Group, APC as Class Counsel.

2.    **Preliminary Approval of Settlement**: The Court finds, on a preliminary basis, that the proposed Class and PAGA Settlement appears to be fair, adequate, and within the range of reasonableness. Considering the settlement as a whole and based on similar analysis, the Court finds, on a preliminary basis, that the proposed PAGA Settlement is reasonable. Accordingly, the Court **GRANTS** Plaintiff's motion for preliminary approval of class and PAGA settlement (Doc No. 53.)

///

3.     **Notice of Settlement**: The Court finds the proposed Notice (Doc. No. 53-2 at 67–79), as amended, to be consistent with the requirements of Rule 23 and due process to provide the best practicable notice under the circumstances. Accordingly, the Court **APPROVES** the proposed Notice as amended *supra* § V.E.

4.     **Settlement Administration**: The Court **APPOINTS** Phoenix Settlement Administrators as the Settlement Administrator to supervise and administer the notice procedure in connection with the Settlement as well as the processing of claims set forth in the Settlement Agreement. The Court **APPROVES** the implementation schedule of the Notice Process. (*See* Doc. Nos. 53 at 3–4; 53-2 ¶ 68.)

5.     **Briefing Schedule**: The motion for final approval of class action settlement and motion for attorneys' fees and costs must be filed and served on all parties no later than **May 7, 2025**. Responses—including either an opposition or a notice of non-opposition by Defendants (only with regard to any motion not filed jointly), any response by LWDA, or any objections by Settlement Class Members—must be filed and served on counsel for all parties no later than **May 21, 2025**. Any reply by Plaintiff must be filed and served on counsel for all parties no later than **May 28, 2025**. Plaintiff's motions must also comply with the following:

The motion for final approval MUST:

- ADDRESS any concerns raised by the Court in the instant Order, *see supra* §§ V.A.1.iii, V.A.2, V.A.4, and V.C.1;
- INCLUDE AND ADDRESS any Objections or responses received as of the filing date; and
- ADDRESS whether LWDA commented on the proposed settlement and INCLUDE LWDA's comments, if any.

In support of the fees, expenses, and incentive award motion, Class Counsel MUST:

- ADDRESS any concerns raised by the Court in the instant Order, *see supra* §§ V.A.1.iii and V.A.2;

///

22-cv-00408-AJB-AHG

- PROVIDE documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled;

- ADDRESS the appropriateness of any upward departure from the 25% benchmark, considering all the Ninth Circuit's factors;

- PROVIDE documentation itemizing and supporting the reasonableness of litigation expenses for which Class Counsel seeks reimbursement; and

- BE PREPARED to address any questions the Court may have regarding the application for fees, expenses, and incentive award at the Final Approval Hearing.

6.  **Final Approval Hearing**: The Court sets a Final Approval Hearing on **Thursday, July 3, 2025**, at **2:00 PM** in Courtroom 4A, of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101, to consider:

- Whether the proposed Class and PAGA Settlement should be finally approved as fair, reasonable, and adequate;

- Whether Class Counsel's requested attorneys' fees and expenses are reasonable;

- Whether Plaintiff's incentive award is appropriate; and

- Whether the Settlement Administrator's expenses are reasonable.

**IT IS SO ORDERED.**

Dated:  January 17, 2025

Hon. Anthony J. Battaglia
United States District Judge

40

22-cv-00408-AJB-AHG