UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MOREL, an individual on his own behalf and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>v.<br><br>HNTB CORPORATION, a Delaware corporation, and DOES 1-10, inclusive,<br>                          Defendants. | Case No.:  22-cv-00408-AJB-AHG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE PAYMENT**<br><br>**(Doc. Nos. 59; 60)** |

Before the Court is a motion for final approval of class action and PAGA settlement (Doc. No. 59) and a motion for award of attorneys' fees, costs, and Plaintiff's service payment (Doc. No. 60), both filed by Plaintiff Matthew Morel ("Plaintiff"). Defendant HNTB Corporation ("Defendant") filed a notice of non-opposition to both motions. (Doc. Nos. 61; 63.) The deadline to object to the settlement was May 21, 2025. (*See* Doc. No. 58 at 39.) To date, no objections have been filed or otherwise brought to the Court's attention. (*See* Doc. No. 62; *see* Docket *generally*.) For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for final approval and **GRANTS** Plaintiff's motion for attorneys' fees, costs, and Plaintiff's service payment.

# I. BACKGROUND

## A. Factual Background

This wage and hour class action centers around Plaintiff's allegations that Defendant failed to reimburse Plaintiff and the other Class Members for necessary business-related expenses, in violation of California Labor Code §§ 2802(c), California Business & Professional Code §§ 17200 *et seq.*, and the Private Attorney Generals Act of 2004 ("PAGA"). (Doc. Nos. 21 ¶¶ 37–70; 53-1 at 8.) Defendant is an infrastructure engineering and design firm that operates throughout the United States, including eight locations in California. (Doc. Nos. 21 ¶ 2; 53-1 at 7.) Plaintiff worked for Defendant from January 4, 2021, to July 20, 2021, as a Project Controls Manager out of Defendant's Ontario, California location. (Doc. Nos. 21 ¶ 3; 53-1 at 8.)

## B. Procedural Background

Plaintiff filed the initial complaint on February 23, 2022, in the Superior Court of California, County of San Diego, as Case No. 37-2022-00007029-CU-OE-CTL. (*See* Doc. No. 1-2 at 5–33.) On March 28, 2022, Defendant timely removed the case to this Court. (Doc. No. 1.) On June 9, 2022, Defendant filed a motion to dismiss the complaint for failure to state a claim under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure[1] (Doc. No. 4), which the Court granted on the papers after briefing by both parties (Doc. No. 17).

On December 5, 2022, Plaintiff filed an amended complaint (Doc. No. 21), which Defendant answered on December 19, 2022 (Doc. No. 22).

The parties attended an early neutral evaluation conference with Magistrate Judge Goddard to attempt to reach early resolution of the case on December 21, 2022; however, the parties were unable to reach a settlement at that time. (Doc. No. 29.) The parties then engaged in informal and formal discovery, including exchange of documents related to Defendant's relevant policies and procedures and Plaintiff's personnel file, depositions of

---

[1] All further references to Rule or Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

Plaintiff and Defendant's 30(b)(6) representative, and extensive meet and confer. (Doc. No. 53-1 at 9.)

In the midst of discovery, the parties attended a private mediation with the Honorable Raul Ramirez (Ret.) on July 20, 2023, but settlement was not reached. (*Id.*) The parties attended an informal discovery conference with Judge Goddard on December 11, 2023, after which Judge Goddard set a Settlement Conference for January 11, 2024. (Doc. Nos. 43; 44.) The parties made significant progress at the Settlement Conference, so Judge Goddard set a follow up Settlement Conference for February 22, 2024. (Doc. Nos. 46; 53-1 at 10.) After attending the second Settlement Conference, the parties accepted the mediator's proposal proffered by Judge Goddard, reaching a settlement in principle. (Doc. Nos. 49; 50; 51; 53-1 at 10.) Over several weeks, the parties extensively negotiated and revised the terms of the settlement. (Doc. No. 53-1 at 10.) On May 23, 2024, the parties executed the "Joint Stipulation of Class Action and PAGA Representative Action Settlement Agreement and Release of Claims" ("Settlement Agreement" or "Settlement"). (*Id.*)

On August 1, 2024, Plaintiff filed a motion for preliminary approval of the class action and PAGA settlement (Doc. No. 53), which Defendant did not oppose. The Court granted Plaintiff's motion and entered the order granting preliminary approval (the "Preliminary Approval Order"), which *inter alia* approved the Notice in form and content,[2] appointed Phoenix Settlement Administrators ("PSA") as Settlement Administrator, set administrative dates, conditionally certified the class, and tentatively approved the Settlement. (Doc. No. 58.)

On May 6, 2025, Yami Burns, a Case Manager for PSA, signed a declaration detailing the PSA's progress to date with notice and claims administration. (*See* Doc. No. 59-3, "Burns Decl.") Burns declared that, on February 15, 2025, PSA received the class

---

[2]    For clarity and accuracy, the Court required five edits to the content of the notice. (Doc. No. 58 at 37–38.)

list data file containing the contact and relevant employee information for the 935 individuals identified as class members. (*Id.* ¶ 3.) Burns further averred that the notice was mailed via U.S. first class mail to all Class Members after conducting a "National Change of Address" search. (*Id.* ¶¶ 4–5.) As of the date of Burns's declaration, PSA received zero returned notices, zero objections, 1 Work Week dispute from a class member, and 15 requests for exclusion.[3] (*Id.* ¶¶ 6–9.) The Settlement Class Members worked a collective total of 1,826 Work Months during the Class Period. (*Id.* ¶ 10.) The 908 PAGA Employees worked a total of 45,957 pay periods during the PAGA Period. (*Id.* ¶ 13.) Burns submitted a true and correct copy of the mailed notice[4] and PSA's invoice as exhibits to the declaration. (Doc. No. 59-3 at 5–13 (mailed notice), 14–16 (PSA invoice).)

On May 7, 2025, Plaintiff filed the instant motions for final approval and for award of attorneys' fees, expenses, and Plaintiff's service payment. (Doc. Nos. 59; 60.) In support of these motions, Plaintiff filed two declarations by Scheider Wallace Cottrell Konecky LLP ("SWCK") partner Carolyn H. Cottrell (Doc. Nos. 59-2, "Cottrell Settlement Decl."; 60-2, "Cottrell Fees Decl."), the declaration of co-counsel Jacob N. Whitehead (Doc. No. 59-4, "Whitehead Decl."), the Settlement Administrator's declaration (Burns Decl.), a declaration by Plaintiff (Doc. No. 59-5, "Morel Decl."), and documentation in support of the fees motion, including itemized billing records (Doc. No. 59-4 at 22–59), attorney costs (Doc. No. 60-2 at 398–99), and settlement administration costs (Doc. No. 59-3).

On July 3, 2025, the Court held hearings on both motions. (*See* Doc. No. 65.) To date, the Court has not been made aware of any objections.

## II.    SETTLEMENT AGREEMENT

The primary terms of the "Joint Stipulation of Class Action and PAGA Representative Action Settlement Agreement and Release of Claims" executed by

---

[3]    At the hearing, Class Counsel affirmed that the sole Work Week dispute was resolved by the Settlement Administrator.

[4]    Upon review, the mailed notice incorporated the edits required by the Preliminary Approval Order. (*Compare* Doc. No. 58 at 37–38 *with* Doc. No. 59-3 at 5–13.)

Plaintiff, on behalf of himself and the class, and Defendant are as follows. (*See* Doc. No. 53-2.)

### A.    Settlement Amounts

Defendant will pay $490,000.00 (the "Gross Settlement Amount"), subject to the Escalator Clause.[5] (Doc. No. 53-2 ¶ 61(b).) The Gross Settlement Amount includes Plaintiff's attorneys' fees (not to exceed 33.33% of the Gross Settlement Amount or $163,317.00) and litigation costs (not to exceed $15,000.00), Plaintiff's Service Payment ($15,000.00), the Settlement Administration Costs (currently estimated to be $12,500.00), the PAGA Settlement and Penalty Payments ($9,800.00), and the Settlement Class Payments to both the Settlement Class Members and the PAGA Employees (currently estimated to be $274,383.00). (*Id.* ¶¶ 61(b), (f).)

|  | Total |
|---|---|
| Gross Settlement Amount | $490,000.00 |
| Attorneys' Fees (33.33%) | ($163,317.00) |
| Out-of-Pocket Litigation Costs | ($15,000.00) |
| Plaintiff's Service Payment | ($15,000.00) |
| Settlement Administration Costs | ($12,500.00) |
| PAGA Allocation | ($9,800.00) |
| **Net Settlement Fund** | **$274,383.00** |

For the Class Action Settlement, Individual Settlement Shares to be paid ranges from $10.69 (lowest) to $1,087.10 (highest), with an average Individual Settlement Share of approximately $298.24. (Burns Decl. ¶ 12.) For the PAGA Settlement, the average

---

[5]    The Escalator Clause contemplates that if the number of Work Months during the Class Period is more than ten percent greater than Defendant's original estimate of 34,639 months, then Defendant will increase the Gross Settlement Amount by one percent for every one percent increase in Work Months over the ten percent threshold. (Doc. No. 53-2 ¶ 61(c).) "Work Months" is defined as "the number of months each Class Member worked for Defendant in in California during the Class Period." (*Id.* ¶ 49). The "Class Period" constitutes "the period of time beginning on March 1, 2020 through May 1, 2024, or the Preliminary Approval Date, whichever occurs first." (*Id.* ¶ 4.)

Individual PAGA Payment to be paid is approximately $2.70. (*Id.* ¶ 13.)

### B. Plan of Allocation

Each Settlement Class Member will be paid a pro-rata share of the Net Settlement Amount[6] (less the PAGA Settlement Payment) determined as follows:

- For every Work Month during the applicable Class Period that the Settlement Class Member performed work, the Member will receive one share. (Doc. No. 53-2 ¶ 61(g)(i)–(ii).)

- Members of the Work from Home Subclass will be entitled to one additional share for each Work Month during which work was performed in California from March 1, 2020, to February 23, 2024. (*Id.* ¶ 61(g)(ii)(1).)

- Members of the COVID-19 Subclass will be entitled to one additional share for each Work Month during which work was performed in California from March 13, 2020 to June 15, 2020, unless the Class Member already received one additional share for that that particular Work Month as a member of the Work from Home Subclass. (*Id.* ¶ 61(g)(ii)(2).)

- Members of both Subclasses will only be entitled one additional share. (*Id.*)

- The total number of settlement shares for all Class Members will be added together, the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure, and that figure will then be multiplied by each Class Member's pro-rata portion of the Net Settlement Amount. (*Id.* ¶ 61(g)(iii).)

- Where a Request for Exclusion is timely, each remaining Settlement Class Member's share will be proportionately increased, so that the amount distributed equals 100% of the Net Settlement Amount. (*Id.* ¶ 61(g)(iv).)

///

---

[6] The Net Settlement Amount is defined as the Gross Settlement Amount less Plaintiff's attorneys' fees and costs, Plaintiff's Service Payment, the Settlement Administration Costs, and the PAGA Penalty Payment. (Doc. No. 53-2 ¶ 61(f).)

Of the total PAGA Allocation, $7,350.00 (75%) will be paid to the Labor and Workforce Development Agency ("LWDA") as the PAGA Penalty Payment, and $2,450.00 (25%) will be distributed to PAGA Employees as the PAGA Settlement Payment. (Doc. Nos. 53-2 ¶¶ 25, 28, 31; 59-3 at 8.) Each PAGA Employee will be paid a pro-rata share of the PAGA Settlement Payment portion of the Net Settlement Amount calculated as follows:

- A given PAGA Employee's number of PAGA Pay Periods divided by the sum of all PAGA Pay Periods of all PAGA Employees. (*Id.* ¶ 61(h).)
- The resulting quotient will be multiplied by the PAGA Settlement Payment to determine the individual PAGA Settlement Payment for that PAGA Employee. (*Id.*)

Class and PAGA Settlement Payments will be distributed by the Settlement Administrator by mail to each Settlement Class Member and PAGA Employee. (Doc. Nos. 53-2 ¶¶ 61(g)(iv), 61(h), 69; 59-3 at 9.) After 180 days, any uncashed, unclaimed, or abandoned Class or PAGA Settlement Payment checks will be transmitted to the California State Controller's Office pursuant to California's Unclaimed Property Law. (Doc. Nos. 53-2 ¶¶ 61(g)(iv), 61(h), 70; 59-3 at 9.)

### C. Attorneys' Fees and Costs

The Class Notice states that Class Counsel will seek $163,317.00 from the Gross Settlement Amount for attorneys' fees and reimbursement of up to $15,000.00 for expenses. (Doc. No. 59-3 at 8.) Additionally, the Class Notice provides that Class Counsel will ask the Court to award Plaintiff a Service Payment in the amount of $15,000.00 "to compensate him for service and extra work provided on behalf of the Class Members and in exchange for a general release of claims." (*Id.*) The proposed Settlement provides that "in exchange for the general Release described in Paragraph 73 herein, Defendant will not oppose Class Counsel's application to the Court for Service Payment of up to $15,000.00 to Plaintiff for his service as a Class Representative." (Doc. No. 53-2 ¶ 61(n).)

///

22-cv-00408-AJB-AHG

However, resolution of any application for such fees and expenses is not material to the Settlement. (*Id.* ¶ 34.)

### D. Release

In exchange for Defendant's $490,000.00 payment, Class Members who do not opt out of the Class release the following claims against Defendants:

> any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind by each and all of the Settlement Class Members (including participation to any extent in any class or collective action), to obtain a recovery arising out of each and all of the claims, causes of action, demands, damages, penalties, and/or liabilities arising at any time during the Class Period that were pled or which could have been pled based on the factual allegations contained in the Complaint . . . .

(*Id.* ¶ 77; *see also* Doc. No. 59-3 at 9 (noticing the release as "from any and all claims, causes of action, demands, damages, or liabilities arising at any time during the Class Period that were pled or which could have been pled based on the factual allegations contained in Plaintiff's First Amended Complaint" based on "all theories of relief" for "all types of relief").)

In addition to the above release, the Class Representative additionally releases:

> any and all charges, complaints, claims, liabilities, obligations, promises, agreements, contracts, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including for back wages, statutory penalties, civil penalties, liquidated damages, exemplary damages, interest, attorneys' fees, and costs) of any nature whatsoever, from the beginning of time through the execution of this Agreement, whether known or unknown, suspected or unsuspected, concealed or hidden, including but not limited to all claims arising out of, based upon, or relating to Class Representative's employment with Defendant or the remuneration for or termination of such employment . . . .

(Doc. No. 53-2 ¶ 73.) The Class Representative's release includes an express waiver of Section 1542 of the California Civil Code. (*Id.* ¶¶ 74–75.) However, the release recognizes that it does not constitute waiver or release of "any claim for workers' compensation

8

benefits or any other claim which cannot be legally waived." (*Id.* ¶ 76.) Moreover, it expressly acknowledges that it does not prohibit the Class Representative "from reporting possible violations of federal or state law or regulation to the government . . . ." (*Id.*)

## III.    MOTION FOR FINAL APPROVAL

Plaintiff filed the instant motion for final approval seeking certification of the Settlement Class, a determination that the Settlement is fair, adequate, and reasonable to the Class, the PAGA Employees, and the State of California, and a finding that the Notice effectuated by the Settlement Administrator afforded Class Members adequate protection. (Doc. No. 59.) Defendant filed a notice of non-opposition to the motion. (Doc. Nos. 61.) The deadline to object to the settlement was May 21, 2025. (*See* Doc. No. 58 at 39.) To date, no objections have been filed or otherwise brought to the Court's attention. (*See* Doc. No. 62; *see* Docket *generally*.) For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for final approval.

### A.    Legal Standard

A class action may only be settled with court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc)).

### B.    Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *See* Fed. R. Civ. P. 23(e)(1)(B). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts "must pay undiluted, even heightened, attention

to class certification requirements." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

In the present case, the Court scrutinized the proposed Class and Subclasses pursuant to Rule 23(a) and 23(b)(3) before granting Plaintiff's motion for preliminary approval and conditionally certifying the class for purposes of settlement. (*See* Doc. No. 58.) The Court noted no concerns at the time, no objections have been filed in response, and no circumstances have changed in the interim. Accordingly, the Court reaffirms and incorporates by reference its prior analysis under Rules 23(a) and (b)(3) as set forth in its Preliminary Approval Order. (*See id.* at 8–18.)

### C.    Adequacy of Notice

Next, the Court must determine whether the class members received adequate notice. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

As mentioned *supra* § I, the Court approved the proposed Notice as modified and the proposed Notice Plan. (Doc. No. 58 at 37–38.) Plaintiff filed a declaration by the Case Manager for the Settlement Administrator, detailing the actions taken by the Settlement Administrator to provide notice in accordance with the Preliminary Approval Order. (*See generally* Burns Decl.) Pursuant to the notice plan, the Settlement Administrator disseminated 935 Notice Packets to Class Members, none of which were returned undeliverable. (*Id.* ¶¶ 5–6.)

Having reviewed the declaration, the Court finds that the Settlement Administrator duly effectuated the court-approved Notice and that Class Members received adequate notice of the Settlement.

///

///

### D. Fairness, Reasonableness, and Adequacy of Proposed Class Action Settlement

Traditionally, courts in this Circuit assess the fairness, reasonableness, and adequacy of a proposed settlement by balancing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

#### 1. Rule 23(e)(2) Factors

In its Preliminary Approval Order, the Court found that the Rule 23(e)(2) factors preliminarily weighed in favor of approving the Settlement. (*See* Doc. No. 58 at 19–11.)

However, the Court also expressed concern about insufficient justification provided for the requested amount of attorneys' fees, the size of Plaintiff's requested incentive award, and the differentiation between treatment of the Subclasses and the rest of the Class. (*Id.* at 23–24, 27–29, 31.) Considering that no pertinent facts the Court relied upon changed, and that the Settlement is not dependent on the Court approving the requested fees and incentive award (*see* Doc. No. 53-2 ¶ 61(f)), the Court reaffirms and reincorporates by reference its analysis finding the adequacy of relief, adequacy of representation, and the lack of collusion support the fairness, reasonableness, and adequacy of the Settlement.[7]

With regard to the equitable treatment factor, the Preliminary Approval Order noted that members of the Subclasses receive an additional share to reflect the varying value of the Subclass claims, but that Plaintiff failed to explicitly explain how the claims of the Subclasses vary from that of the rest of the Class and why this calculation of additional shares is an equitable representation of those differences. (Doc. No. 58 at 31–32.)

To address the Court's concerns, Plaintiff explained that Defendant's lack of records regarding remote work combined with the "potentially inconsistent and discretionary nature of remote work among Class members poses significant risks to Plaintiff's ability to establish liability, prove damages, or obtain class certification for the Class." (Doc. No. 59-1 at 21.) However, the COVID-19 and Work from Home Subclasses present reduced risk because Plaintiff is more likely to be able to show that the Subclass Members were required to use their own cell phones and home-internet for work-related duties, the claims lend themselves to a more "straightforward" damages model, and the Subclasses are more likely to satisfy certification requirements. (*Id.* at 21–22.) Based on those considerations, Class Counsel discounted the exposure amount for Work Months covered by the Subclasses by 30%, while discounting the rest of the Class's Work Months by 60%. (*Id.* at 22.) Finally, the COVID-19 Subclass's Work Months are entirely subsumed by the Work

---

[7] The Court will analyze the requested fees and incentive award when addressing Motion for Award of Attorneys' Fees and Costs, and Service Payment (Doc. No. 60). *See infra* § IV.

from Home Subclass's Work Months, which is why the Settlement only allocates one additional share if the Class Member is a part of both Subclasses. (*Id.*)

Based on the rationale provided, I suggest the Court is satisfied that the proposed apportionment takes appropriate account of the differences between Class Members considering the duration of their employment during the applicable time period and the potential variation in strength of their claims. Accordingly, the Court finds that all Rule 23(e)(2) factors weigh in favor of approval.

### 2.    Additional Ninth Circuit Factors

As the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the remaining factors traditionally considered by this Circuit.[8] *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

### i.    Experience and Views of Counsel

In its Preliminary Approval Order, the Court found the experience and views of counsel weighed in favor of approval. (Doc. No. 58 at 32.) As no changes to Class Counsel have occurred, no relevant facts have changed, and no objections to Class Counsel have been brought to the Court, the Court reaffirms and incorporates by reference its analysis on this factor and find this factor weighs in favor of settlement approval.

### ii.    Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

///

---

[8]    As there is no government actor present in the instant action, the Court forgoes analysis of this factor. (*See* Doc. No. 58 at 32 n.10.)

Here, no objections to the Settlement by Class Members have been received and only 15 Class Members, which constitutes 1.6% of the Class, opted out. (Burns Decl. ¶¶ 7, 10.) The absence of objections and such a low percentage of opt outs weigh in favor of settlement. *See, e.g.*, *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 ("The complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the Proposed Settlement among the Class Members. That unanimous, positive reaction to the Proposed Settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.").

### 3. Conclusion

Having analyzed the Rule 23(e)(2) factors and the Ninth Circuit's factors, and finding them weigh in favor of approval, the Court finds the Settlement fundamentally fair, adequate, and reasonable. *See Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution[,] especially . . . in complex class action litigation . . . .").

### E. Fairness, Reasonableness, and Adequacy of Proposed Settlement of PAGA Penalties Claim

As the Settlement resolves Plaintiff's PAGA claims as well, the Court must analyze whether the Settlement fulfils the statutory requirements of PAGA and is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *See* Cal. Lab. Code § 2699(s)(2) ("The superior court shall review and approve any settlement of any civil action filed pursuant to this part."); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (identifying that district courts apply a "Rule 23-like standard" due to the absence of authority governing the standard for review and approval of PAGA settlements).

### i. PAGA Statutory Requirements

In its Preliminary Approval Order, the Court confirmed the Settlement distributes the PAGA Allocation appropriately with $7,350.00 or 75% to be paid to the LWDA and

$2,450.00 or 25% to be distributed to PAGA Employees. (Doc. No. 58 at 34.) *See also* Cal. Lab. Code § 2699(i) (2022) (amended July 1, 2024). Additionally, the Court noted that the Settlement Agreement and Notice both clearly state that PAGA Employees cannot opt out from settlement of the PAGA Claims. (Doc. No. 58 at 34.) *See also Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009) ("Because an aggrieved employee's action under the Labor Code Private Attorneys General Act of 2004 functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) ("Thus, in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement.").

Additionally, the proposed settlement must be sent to the LWDA at the time it is submitted to the court for approval. Cal. Lab. Code § 2699(s)(2). Here, Plaintiff submitted the Settlement to the LWDA on August 7, 2024—six days after filing the motion for preliminary approval with the Court. (*Compare* Doc. No. 59-1 at 24 *and* Cottrell Settlement Decl. ¶¶ 78, 127 *with* Doc. No. 53.) Although submission to the LWDA was delayed, the delay was minimal and in the intervening eleven months the LWDA has not chosen to comment on the Settlement. (*See* Cottrell Settlement Decl. ¶¶ 78, 127.) Accordingly, the Court finds that Plaintiff has complied with PAGA's statutory requirements.

### ii.    Fairness, Adequacy, and Reasonableness of PAGA Allocation

"[W]hen a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *Haralson*, 383 F. Supp. 3d at 971 (quoting *O'Connor*, 201 F. Supp. 3d at 1133).

///

Although the PAGA Allocation over all represents 2.2% of the Gross Settlement Amount (Cottrell Settlement Decl. ¶ 129), the average Individual PAGA Payment is $2.70[9] (Burns Decl. ¶ 13). As noted by the Court in its Preliminary Approval Order, this recovery is quite low; however other courts have approved similar average recovery payments and similar proportions of gross settlement funds. *See e.g.*, *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving a PAGA apportionment of 0.67% of the gross settlement fund because the LWDA did not object); *Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL, 2024 WL 4994339, at *17 (S.D. Cal. Dec. 5, 2024) (approving a PAGA allocation constituting approximately 1% of the maximum settlement fund); *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *2 (N.D. Cal. Aug. 25, 2017) (approving allocation of $5,000.00, or approximately 1%, for PAGA claims out of the $370,000.00 total settlement fund); *Alcala v. Meyer Logistics, Inc.*, No. CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA allocations between 0% and 2% of the gross settlement amount). Moreover, the Settlement ensures that PAGA's interests are satisfied given the difficulties Plaintiff would have in litigating this case through trial and given the parties' negotiation efforts. *See Haralson*, 383 F. Supp. 3d at 972 ("[W]here the settlement of Labor Code claims under Rule 23 provides 'robust' relief to the class, it supports a greater reduction in PAGA penalties.").

As such, the Court finds the PAGA Allocation to be fair, adequate, and reasonable considering it in relation to the Class recovery and to other approved PAGA Settlements, and considering neither the LWDA nor any PAGA Employees have objected.

///

///

---

[9] This reflects a $0.22 decrease in the average Individual PAGA Payment from the Court's preliminary estimate (*see* Doc. No. 58 at 35), potentially attributable to the number of PAGA Employees being 908 instead of 839 (*compare id. with* Burns Decl. ¶ 13).

### iii.    Conclusion

Based on the foregoing, the Court finds the Settlement meets PAGA's statutory requirements and is fair, adequate and reasonable.

### F.    Adequacy of Allocation Plan

"Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision*, 559 F. Supp. 2d at 1045 (citation and internal punctuation omitted). "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Id.* (collecting cases).

Here, the proposed Plan of Allocation is set forth the Notice that was mailed to Class Members. *See supra* § II.D (explaining Plan of Allocation). As detailed *supra* § III.C and D.1, the Court has found the Plan of Allocation to equitably treat each Class Member and PAGA Employee based on his or her individual damages in proportion to those incurred by the rest of the Class.

Accordingly, the Court finds the allocation plan fair, reasonable, and adequate.

### G.    Reasonableness of Settlement Administration Costs

Per the terms of the parties' proposed Settlement and the Preliminary Approval Order, PSA was approved as the Settlement Administrator and is to be paid from the Settlement Fund up to $12,500.00 for actually incurred expenses and costs. (Doc. No. 53-2 ¶ 61(p).) PSA provided an itemized invoice with actually incurred costs, as of the date of the declaration, and an estimate of remaining costs. (Doc. No. 59-3 at 15–16; *see also* Burns Decl. ¶ 14.)

PSA describes its responsibilities with providing notice and administering the Settlement as including: (i) preparing, printing, and mailing the Class Notice ("Notice"); (ii) responding to inquiries from Class Members; (iii) calculating the number of months each Class Member worked during the period from March 1, 2020, and May 1, 2024 ("Class Period") and calculating the number of pay periods of each Aggrieved Employee worked during the period from August 2, 2020, through May 1, 2024 ("PAGA Period"); (iv) determining the

validity of letters indicating a request to be excluded from the Class Settlement ("Requests for Exclusion"), written objections to the Class Settlement ("Objections"), and/or dispute regarding the number of Work Months submitted by Class Members; (v) calculating the Net Settlement Amount and the Individual Settlement Shares to Class Members; (vi) calculating and issuing the Individual Settlement Payments and distributing them to Settlement Class Members; (vii) issuing the payment to Class Counsel for attorneys' fees and costs, the Enhancement Payment to Plaintiff, and the employer/employee payroll taxes to the appropriate taxing authorities; and (viii) such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or as the Court orders.

(Burns Decl. ¶ 2.)

Courts regularly award similar administrative costs associated with providing notice to the class. *See, e.g.*, *Yanez v. HL Welding, Inc.*, No. 20CV1789-MDD, 2022 WL 788703, at *4 (S.D. Cal. Mar. 15, 2022) (awarding $11,000.00 in administrative costs in a 557-member class, FLSA and PAGA action); *Lopez v. Velocity Transp. LLC*, No. 22-CV-1414-RSH-KSC, 2024 WL 4957565, at *15 (S.D. Cal. Dec. 3, 2024) (awarding $9,620.00 in settlement administration costs in a 484-member class and PAGA action).

Based on the foregoing, the Court concludes the Settlement Administrator's costs are fair and reasonably incurred for the benefit of the Class.

## H.    Conclusion

In conclusion, having found the effectuated Notice adequate, the Settlement and Plan of Allocation fair, adequate and reasonable, and the Settlement Administrator's costs reasonable, the Court **GRANTS** Plaintiff's motion for final approval, subject to a final accounting of itemized settlement administration costs.

## IV.    MOTION FOR ATTORNEYS' FEES, COSTS, AND PLAINTIFF'S SERVICE PAYMENT

Plaintiff filed the instant motion seeking an award of $163,317.00 (33.33% of the Gross Settlement Amount) for attorneys' fees, reimbursement of $15,000.00 for litigation costs incurred, and an award of $15,000.00 for Plaintiff, each to be paid from the Gross Settlement Amount. (Doc. No. 60.) Defendant filed a notice of non-opposition (Doc. No.

63), and no Class Members have objected. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for attorneys' fees, litigation costs, and an award for Plaintiff.

### A.    Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund." *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).

### B.    Attorneys' Fees

First, SWCK and W Employment Law seek a combined $161,317.00 in attorneys' fees pursuant to the Settlement. (Doc. No. 60.)

### 1.    Legal Standard

"In a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016).

"Under the percentage-of-fund method, the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee." *Stanger*, 812 F.3d at 738 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "The benchmark percentage is 25%, but, similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) (quoting *Kim*, 8 F.4th at 1181). "[I]n assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method," courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g.,

cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

"Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple*, 50 F.4th at 784. "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Stanger*, 812 F.3d at 739 (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002)).

### 2.    Percentage-of-Fund Analysis

Considering the circumstances of this case under the percentage-of-fund analysis, the Court finds Counsel's departure from the 25% benchmark to 33.33% reasonable.

First, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision*, 559 F. Supp. 2d at 1046. According to Plaintiff, the Gross Settlement Amount ($490,000.00) represents approximately 15% of the maximum exposure and approximately 36% of the revised exposure accounting for risk, which Plaintiff argues is "a solid result" and "commensurate to results achieved in similar class action settlement alleging reimbursement claims." (Doc. No. 60-1 at 11; *see also* Doc. No. 59-1 at 16.) Additionally, the Settlement provides a benefit beyond the cash recovery because it serves PAGA's deterrence and educational purposes by providing the statutorily required payment to the LWDA. (Doc. No. 60-1 at 14.)

Second, due to the difficulties with the case, including with proving the claimed expenses were incurred in direct consequence of the discharge of the Class Member's duties and damages where remote work was not documents by Defendant, and due to the contingency fee nature of Counsel's employment, Counsel faced risk in taking on representation of Plaintiff and would continue to face serious risk if further litigation was pursued. (*See* Doc. Nos. 58 at 21; 60-1 at 13–14.) Relatedly, such representation required Counsel to bear the burden of all costs and fees out-of-pocket, while also impeding their

ability to take on other "equally or more remunerative" clients. (*See* Whitehead Decl. ¶ 28; Doc. No. 60-1 at 14–16.)

Third, considering awards in similar cases, "[t]he 33.33% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions." *Yanez*, 2022 WL 788703, at *12 (collecting cases).

Based on the forgoing, the Court finds the upward departure from 25% to 33.33% a reasonable award under the percentage-of-fund analysis.

### 3.    Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003)). "Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]'" *Id.* at 941–42 (quoting first *Cunningham v. Cnty. of Los Angeles,* 879 F.2d 481, 488 (9th Cir. 1988) and then *Hanlon*, 150 F.3d at 1029). However, "adjustments to the lodestar 'are the exception rather than the rule.'" *Stanger*, 812 F.3d at 738 (quoting *Fischel*, 307 F.3d at 1007).

Counsel represents that SWCK expended 600.2 hours on this case, resulting in a lodestar of $497,282 (Doc. No. 60-1 at 16; Cottrell Fee Decl. ¶ 106) and W Employment Law expended 86.8 hours, resulting in a lodestar of $24,857.50 (Whitehead Decl. ¶ F). SWCK's hourly rates range from $1,200.00 to $1,350.00 for partners, $800.00 to $1,150.00 for of-counsel- and associate-level attorneys, and $385.00 to $550.00 for paralegals. (*See* Doc. No. 60-2 at 230–81 (SWCK billing records).) W Employment Law's hourly rates

include $950.00 for senior litigation counsel, $450.00 to $500.00 for associate legal counsel, $150.00 to $450.00 for paralegals and staff. (Whitehead Decl. ¶ 26; Doc. No. 59-4 at 22–56 (W Employment Law billing records).) In support of the reasonableness of the hourly rates, Counsel provides the license date and experience of the attorneys who worked on the case.

Additionally, Counsel includes a declaration from an expert analyzing the hourly rates based on the specific experience, background, and expertise of attorneys litigating a prison conditions class action before this Court. (Doc. No. 60-2 at 283–317.) The Court does not find this declaration persuasive as it analyzes a different practice area within class actions and has not been evaluated by the Court at this time.

Counsel also points to cases in this Circuit where SWCK rates were found to be reasonable for purposes of a lodestar cross check. (Doc. No. 60-1 at 17–18.) As reasonableness is measured by the prevailing rates of the district in which the litigation occurred, the Court narrows its focus to the only case Counsel cites in this district. In 2021, this district found "billing rates ranging from $300 to $450 for the paralegals and $680 to $1,005 for the attorneys" to be reasonable in a wage and hour class action where the gross settlement amount was $7,600,000.00. *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-CV-00411-WQH-AHG, 2021 WL 3419232, at *7 (S.D. Cal. Aug. 5, 2021). Here, the hourly rates of three attorneys—Cottrell, Bylsma, and Jrade—exceed those approved by this district in *Amaraut. But see Alkady v. First Transit, Inc.*, No. 16-CV2291-L-BGS, 2021 WL 2072376, at *6 (S.D. Cal. May 24, 2021) ("The court finds that a partner billing rate of $785 is unreasonably high in this District for wages-and-hours litigation."); *Hose v. Wash. Inventory Serv., Inc.*, No. 14-CV-2869-WQH-AGS, 2020 WL 3606404, at *9 (S.D. Cal. July 2, 2020) (finding SWCK's attorney hourly rates ranging from $500.00 for a fourth year attorney to $924.00 for a partner with 24 years of experience to be "slightly high" for this district in a wage and hour class action).

Although the billing rates are high for this district, the requested amount represents a negative multiplier of approximately 0.31. (Doc. No. 60-1 at 13, 16.) This negative

multiplier suggests that the fee request is reasonable. *See, e.g.*, *Lopez*, 2024 WL 4957565, at \*14 (collecting cases); *Hose*, 2020 WL 3606404, at \*9 ("Courts in this circuit have routinely authorized awards representing a similar reduction in the lodestar."); *cf. Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1007 (N.D. Cal. 2025) (collecting cases where positive multipliers ranging from 1 to 4 were applied in California wage and hour class actions).

### 4. Conclusion

The Court finds Counsel's request for 33.33% of the $490,000.00 Gross Settlement Amount reasonable under the circumstances, given the records, declarations, and testimony provided by Counsel, and considering the complex nature of a class action lawsuit, the favorable result obtained both monetary and otherwise, the lack of objections, and lodestar cross-check. Accordingly, the Court **GRANTS** the instant motion with regard to Counsel's requested attorneys' fees.

### B. Costs

Counsel seeks an award of $15,000.00 for reimbursement of costs expected in prosecuting this action, which Counsel asserts is less than the $16,056.80 actually incurred. (Doc. No. 60-1 at 19; *see also* Cottrell Fee Decl. ¶ 117 (averring $14,373.73 in actual expended costs; Whitehead Decl. ¶ 27 (attesting to $1,683.07 in actual costs).)

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). "In assessing the reasonableness of the reimbursement request, the Court is 'reminded that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question,' and 'the attorney is expected to absorb some of the cost of doing business as an attorney.'" *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)).

///

Here, Counsel seeks reimbursement of *inter alia* the following costs:

- $2,140.56 for legal research and document retrieval, incurred through use of Westlaw ($159.22), Pacer ($35.70), and LexisNexis ($1,945.64);

- $4,257.86 for deposition-related costs;

- $4,200.00 for mediation-related expenses;

- $373.79 in copying and printing fees, mailing costs, subpoena fees, process server fees;

- $1,577.04 in filing fees;

- $462.50 for a background investigation on Plaintiff; and

- $463.50 in travel expenses.

(*See* Doc. No. 60-2 at 398–99).) Having reviewed the itemized billing records and considering the circumstances of the instant action, the Court finds the requested costs were reasonably incurred in litigating this action for the benefit of the Class and are all commonly reimbursed in similar amounts. *See, e.g.*, *Heid v. CyraCom Int'l, Inc.*, No. 22-CV-01445-MMA-KSC, 2024 WL 4008650, at *13 (S.D. Cal. Aug. 30, 2024) (finding reasonable $31,110.36 in fees related to mediation, legal research, service of process, filing, travel, courier and copying); *Scott v. Blackstone Consulting, Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *11 (S.D. Cal. Jan. 24, 2024) (awarding $15,204.08 filing fees, service fees, photocopying costs, postage, travel, discovery and research related expenses, mediation fees and related travel, and other litigation related expenses); *Yanez*, 2022 WL 788703, at *13 (approving $10,000.00 in "expenses [that] include[d] costs for filing, courier charges, mediation, in house copies, postage, legal research, pacer fees, PAGA filing fees, expert fees, CourtCall, and Vendor Copy Costs").

Based on the briefing, hearing testimony, and documentation provided, the Court **GRANTS** Counsel's request for expenses.

## C. Class Representative Service Award

Finally, in the instant motion, Plaintiff seeks an award $15,000.00 for his service as Class Representative. (Doc. No. 60-1 at 19–21.)

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Although "[i]ncentive awards are fairly typical in class action cases," they are discretionary. *Staton*, 327 F.3d at 958. In deciding whether to approve an incentive award, courts consider factors including "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d at 947 (quoting *Staton*, 327 F.3d at 977); *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1002 (N.D. Cal. 2017) (listing factors including risk to the representative, notoriety and personal difficulties encountered, amount of time and effort spent, duration of litigation, and personal benefit).

Here, the instant motion requests a $15,000.00 incentive award for the named plaintiff in this action, Matthew Morel. (Doc. No. 60-1 at 20; *see also* 53-2 ¶¶ 8, 61(f), 61(n).) Plaintiff details that he "provided significant assistance" to Counsel since the inception of the action, totaling an estimated 65 hours. (Morel Decl. ¶¶ 8, 21.) Specifically, Plaintiff details with time frame and hour estimates how he frequently communicated with Counsel by phone, email and video conference, reviewed documents, responded to discovery, worked to obtain records from his previous phone carrier, prepare and sat for deposition, and participated in the mediation process and settlement discussions, including while out traveling with family internationally. (*Id.* ¶¶ 9–21.) Additionally, Plaintiff chose to actively participate in this action despite the risk of deterring future employers from hiring him, the demand such participation placed on his time and energy, which led to Plaintiff experiencing "extended periods of anxiety, fatigue, and physical strain—ultimately requiring him to take time off to address health-related concerns." (*Id.* ¶¶ 7, 21.) At the hearing, Counsel testified that Plaintiff's involvement was markedly above that of other plaintiffs.

///

Though the request is high for the district,[10] the Court acknowledges Plaintiff invested significant time and energy into prosecuting this action, took on risks to his professional reputation, and suffered from the emotional toll of his role. Accordingly, the Court **GRANTS** Plaintiff's request for an incentive award of $15,000.00. *See, e.g.*, *Sengvong v. Probuild Co. LLC*, No. 19-CV-02231-MMA-JLB, 2021 WL 4504620, at *1, *12 (S.D. Cal. Oct. 1, 2021) (approving $15,000.00 service award despite it being "high" based on the named plaintiff's efforts in recovering a $1,400,000.00 gross settlement amount for 1,892 settlement class members); *Preston v. Porch.com, Inc.*, No. 21-CV-00168-JLS-BLM, 2022 WL 3348428, at *5 (S.D. Cal. Aug. 12, 2022) (approving a $10,000.00 service award where the gross settlement fund was $500,000.00).

### D.    Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff's motion and **AWARDS** $161,317.00 of the Gross Settlement Amount for attorneys' fees, $15,000.00 in litigation expenses, and $15,000.00 for Plaintiff's service as class representative.

## V.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for final approval and **GRANTS** Plaintiff's motion for attorneys' fees, costs, and Plaintiff's service payment.

The Court **APPROVES** the Settlement, and all of its terms, and **DIRECTS** the parties to effectuate the Settlement Agreement according to its terms, including *inter alia* that:

- The California Labor & Workforce Development Agency be paid $7,350.00 out of the $9,800.00 total PAGA Allocation;

- Phoenix Settlement Administrators be paid $12,500.00 for its services rendered as Settlement Administrator;

- Schneider Wallace Cottrell Konecky LLP and W Employment Law Group,

---

[10]    Specifically, the requested incentive award is approximately 50 times greater than the average Individual Settlement Share, which is estimated at approximately $298.24. (*See* Doc. No. 59-3 ¶ 12.)

APC be paid $163,317.00 in attorneys' fees and $15,000.00 in reasonable litigation costs for their work as Class Counsel; and

- Plaintiff Matthew Morel be awarded $15,000.00 for his service as Class Representative.

The Court further **DIRECTS** the Clerk of Court to close the case.

**IT IS SO ORDERED.**

Dated:  July 7, 2025

Hon. Anthony J. Battaglia
United States District Judge